STATE OF NORTH CAROLINA v. OSCAR LLOYD

No. 577A85

(Filed 3 February 1988)

**1. Jury § 6.4— capital case—prospective jurors—exclusion of questions concerning religious affiliations**

The trial court in a first degree murder case did not abuse its discretion by prohibiting defense counsel from inquiring into prospective jurors' religious denominations and the extent of their participation in church activities where defendant was able to determine potential jurors' beliefs about capital punishment by asking them other questions.

**2. Jury § 7.12; Criminal Law § 135.3— capital punishment views—exclusion of jurors**

The trial court in a first degree murder case properly excluded two prospective jurors for cause where their answers to the prosecutor's questions clearly disclosed that they could not follow the law or instructions of the trial court if to do so would result in a death sentence.

**3. Criminal Law § 169.3— admission of evidence over objection—similar evidence admitted without objection**

Where evidence is admitted over objection, but the same or similar evidence has been admitted previously or is admitted subsequently without objection, the benefit of the objection is lost, and the defendant is deemed to have waived his right to assign as error the admission of the evidence.

**4. Criminal Law § 73.4— excited utterances—exclusion as harmless error**

Even if it is assumed that statements made by defendant as he emerged from the crime scene that he had found the victim's body on the floor and turned it over were admissible as excited utterances, the exclusion of such evidence was not prejudicial error in light of the overwhelming evidence of defendant's guilt of the first degree murder of the victim. N.C.G.S. § 8C-1, Rule 803(2).

**5. Criminal Law § 135.9— capital case—mitigating circumstance—no significant history of prior criminal activity—sufficient evidence**

The trial court in a first degree murder case did not err in submitting for the jury's consideration over defendant's objection the statutory mitigating circumstance of "no *significant* history of prior criminal activity" where there was evidence tending to show that defendant had been convicted of two felonies almost twenty years before his trial in the present case, that defendant had been convicted of seven alcohol-related misdemeanors in the last ten years, and that defendant had suffered from episodic alcohol abuse for the past ten years. N.C.G.S. § 15A-2000(f)(1).

**6. Criminal Law § 135.9— capital case—nonstatutory mitigating circumstances—no prior capital offenses and no felonies in past ten years—court's refusal to submit**

The trial court in a first degree murder case did not err in refusing to submit to the jury the nonstatutory mitigating circumstances that the defendant had no prior record of capital offenses and that the defendant had not been convicted of a felony in the past ten years since the court's submission of the mitigating circumstance of "no significant history of prior criminal activity," coupled with the submission of the mitigating circumstance of "any other circumstances arising from the evidence which the jury deems to have mitigating value," allowed the jury to consider defendant's criminal record as a whole and afforded the jury the flexibility necessary to give the defendant the benefit of any parts of his record it deemed of mitigating value.

**7. Criminal Law § 135.6— capital case—penalty phase—exclusion of psychological evaluation—absence of prejudice**

Defendant was not prejudiced by the trial court's exclusion of a psychological evaluation concerning defendant's competency to stand trial during the penalty phase of a first degree murder case where the purpose for introducing the psychological evaluation was to establish a mitigating circumstance regarding defendant's alcohol abuse, and the jury found as a mitigating circumstance that defendant had suffered from episodic alcohol abuse since 1973.

**8. Constitutional Law § 31— capital case—mitigating circumstances—funds for psychiatrist—insufficient preliminary showing**

Defendant did not make a sufficient showing that his mental condition was likely to be a significant factor during the sentencing phase of his first degree murder trial so as to require the trial court to allow defendant's motion for funds to hire a private psychiatrist or psychologist to assist him in preparing and presenting evidence concerning mitigating circumstances where counsel for defendant merely tendered to the court a psychiatric evaluation which included a notation that defendant had suffered from episodic alcohol abuse, and the only other "showing" made in support of the motion was defense counsel's statement to the effect that he felt the examination of defendant had been inadequate and that defendant was "constitutionally entitled to more." N.C.G.S. § 7A-450(b); N.C.G.S. § 7A-454.

**9. Criminal Law § 135.8— first degree murder—especially heinous, atrocious, or cruel aggravating circumstance—sufficient evidence**

The trial court in a first degree murder case properly submitted to the jury the "especially heinous, atrocious, or cruel" aggravating circumstance in that the evidence would support a finding that the level of brutality of the murder exceeded that normally found in first degree murder cases and that the murder was pitiless and unnecessarily torturous to the victim where the evidence tended to show: defendant deliberately sought out and robbed the victim when he knew the victim would be alone in his laundry; the victim was stabbed seventeen times during the struggle in which the victim attempted to fend off defendant's blows; after the victim lay fatally wounded on the floor, defendant kicked him about the head and shoulders with such force as to cause

State v. Lloyd

the victim's brain to swell and hemorrhage and ultimately cause his death; and the victim did not die immediately but lingered for at least five to ten minutes before dying.

**10. Criminal Law § 135.9— capital case—mitigating circumstances—requirement of unanimous decisions**

Requiring jurors in a capital case to reach unanimous decisions regarding the presence of mitigating circumstances does not deprive a defendant of his right to a reliable sentencing hearing, his right to due process of law, or his right to be free from cruel and unusual punishment.

**11. Criminal Law § 135.9— capital case—mitigating circumstances—burden of proof—due process**

Due process does not prohibit placing upon the defendant in a capital case the burden of proving mitigating circumstances by a preponderance of the evidence.

**12. Criminal Law § 102.12— first degree murder—effect of jury disagreement on death sentence—jury argument not permitted**

The trial court did not err in prohibiting defendant from arguing to the jury in a first degree murder case that a life sentence would be imposed if the jury could not agree upon a sentence.

**13. Criminal Law § 135.9— especially heinous, atrocious, or cruel aggravating circumstance—constitutionality**

The "especially heinous, atrocious, or cruel" aggravating circumstance of N.C.G.S. § 15A-2000(e)(9) is neither unconstitutionally vague nor overbroad.

**14. Criminal Law § 135.10— first degree murder—death sentence not disproportionate**

A sentence of death for first degree murder was not imposed under the influence of passion, prejudice or any other arbitrary factor, and the record supported the jury's findings of the aggravating circumstances on which the sentence of death was based—that the murder was especially heinous, atrocious or cruel and was committed while defendant was engaged in the commission or attempt to commit a robbery. Furthermore, the death sentence was not excessive or disproportionate to the penalty imposed in similar cases where defendant was convicted of first degree murder on the basis of premeditation and deliberation and of robbery; defendant deliberately sought out and robbed the victim when he knew the victim would be alone in his laundry; the victim was stabbed seventeen times and repeatedly kicked about the head after he was on the floor in a prone position; and the victim did not die immediately but remained helpless on the floor awaiting his impending death for a minimum of five to ten minutes after sustaining the most significant blows.

APPEAL from judgment and sentence of death entered by *Friday, J.,* at the 15 July 1985 Criminal Session of Superior Court, CHEROKEE County. The defendant was charged in bills of indictment, proper in form, with robbery with a dangerous weapon and

murder of Burton B. Cornwell, Jr. The jury found the defendant guilty of murder in the first degree and robbery with a dangerous weapon. Following a sentencing hearing held pursuant to N.C.G.S. § 15A-2000, the jury recommended that the defendant be sentenced to death for the murder conviction. The trial court complied with the jury's recommendation and also sentenced the defendant to a term of fourteen years imprisonment for the armed robbery conviction. From the judgment imposing a sentence of death, the defendant appealed to the Supreme Court as a matter of right under N.C.G.S. § 7A-27(a). On 21 October 1985, the Supreme Court allowed the defendant's motion to bypass the Court of Appeals on his appeal of the armed robbery conviction. Heard in the Supreme Court on 10 December 1987.

*Lacy H. Thornburg, Attorney General, by J. Michael Carpenter, Special Deputy Attorney General, for the State.*

*Ann B. Petersen, for the defendant-appellant.*

MITCHELL, Justice.

The defendant was convicted of the 12 March 1985 armed robbery and murder of Burton B. Cornwell, Jr. and sentenced to death and a term of fourteen years. He has brought forward assignments of error relative to the guilt-innocence phase and the sentencing phase of his trial. Having considered with care the entire record and each of the assignments, we find no prejudicial error in either phase of the defendant's trial. We decline to disturb the defendant's convictions or sentences.

The evidence presented by the State tended to show that at 8:00 a.m. on Tuesday, 12 March 1985, Burton Cornwell went to work at Murphy Laundry and Dry Cleaning in Murphy, North Carolina. The laundry, located adjacent to a service station and directly across the street from Ivie Funeral Home, had been owned and operated by Cornwell for about thirty-five years. On Tuesdays, Cornwell worked alone at the laundry doing alterations and taking in and giving out laundry.

The defendant had been employed as a washer at Murphy Laundry for approximately four years. He worked at the laundry until 21 December 1984 when he left on a two-week vacation. When he returned to work six weeks later, Cornwell fired him.

Pat Tagliarini testified that she went into Murphy Laundry and spoke briefly with Cornwell at 8:14 a.m. on 12 March 1985, the morning of Cornwell's murder. Cornwell was the only person in the laundry at that time.

At approximately 8:15 a.m. Marvin Cook, an employee of Ivie's Funeral Home, observed the defendant enter the laundry. He testified that the defendant came back outside at about 8:30 a.m. "hollering and motioning" for Cook to come over to the laundry. Cook ran across the street and, upon entering the laundry, saw Cornwell lying on the floor behind the service counter. Cook described the victim as lying on his back with "blood from one end to the other."

Officer Williford Dills of the Murphy Police Department testified that on 12 March 1985 when he arrived at the scene, he observed the cash register turned from its normal position on the counter. The drawer was open and several coins were on the floor. Officer Dills positively identified a knife found at the murder scene as the defendant's. He stated that the knife had hair and blood on it when he seized it at the scene.

Murphy Police Chief C. C. Howard testified that when he entered the laundry on 12 March 1985, he observed that the gumball machine was broken, the cash register was turned from its normal position, the cash drawer was open and coins and straight pins were all over the floor. Chief Howard further testified that there were bloody shoe prints on the laundry floor. These shoe prints had a pattern described by several witnesses as being a "waffle" or "grid" pattern.

Highway Patrolman Tom Cheek, who transported the defendant from Murphy Laundry to the jail, testified that the defendant's tennis shoes were covered with blood which had "seeped or soaked into the material part of the shoes." Cheek recovered from the defendant's right front pants pocket a fifty-dollar bill folded in a distinct way and stained with blood.

Sharon Donahue was at the service station adjacent to Murphy Laundry when she saw Grier Ivie and Marvin Cook running across the street from the funeral home to the laundry. Donahue went into the laundry and observed the victim lying on the floor. While she was in the laundry, she heard the defendant yelling,

"Oh, shit. Oh, no. No, No." After Donahue checked the victim's pulse and found none, the defendant exclaimed, "You shouldn't have done it." Donahue further recalled that she had seen the defendant in the laundry on 2 March 1985, the day before her husband's birthday. She testified that as she walked by the laundry on that day, she heard Cornwell yelling at the defendant in an angry tone of voice and pointing to the door.

On the day following the murder, Officer Dills and Chief Howard made a more detailed search of the premises and discovered the victim's wallet hidden in a washer on the premises. The wallet contained, among other things, two fifty-dollar bills folded in the same distinct way as the fifty-dollar bill recovered from the defendant.

Kenneth Cope, an agent for the State Bureau of Investigation, searched the premises on 13 March 1985 and discovered a letter from the Employment Security Commission among other business papers on the victim's desk. This letter was admitted into evidence over the defendant's objection.

A pathologist's report indicated that Cornwell had suffered thirty-six wounds on his body. These wounds included both sharp-edged lacerations, suggesting stabs by a knife, and jagged lacerations, suggesting blows by a blunt object. Specifically, Cornwell's death was caused by a blunt trauma to the head which caused his brain to swell and hemorrhage. In the pathologist's opinion, the victim lived a minimum of five to ten minutes after sustaining the most significant blows. The pathologist further opined that several of the blunt force wounds to the head were consistent with being kicked about the head while in a prone position.

An expert in the field of footwear impressions testified that in his opinion the defendant's shoes could have made the impression on the victim's forehead. He also opined that the defendant's shoes were the same shoes that made bloody shoe prints observed all over the laundry floor.

I.

GUILT-INNOCENCE DETERMINATION PHASE

[1] In the defendant's first assignment of error he contends that the trial court abused its discretion during jury selection by pro-

hibiting defense counsel from inquiring into prospective jurors' religious denominations and the extent of their participation in church activities. The trial court is vested with broad discretion in controlling the extent and manner of questioning of prospective jurors, and its decisions in this regard will not be disturbed absent a showing of an abuse of discretion. *State v. Brown*, 315 N.C. 40, 55, 337 S.E. 2d 808, 820 (1985), *cert. denied*, --- U.S. ---, 90 L.Ed. 2d 733 (1986). In the present case, we conclude that the trial court properly prohibited the defense counsel's inquiry into the religious affiliations and practices of prospective jurors.

Even though the State and the defendant are entitled to inquire into a prospective juror's beliefs and attitudes, neither has the right to delve without restraint into all matters concerning potential jurors' private lives. There are numerous questions wholly unrelated to specific religious affiliations and practices which may be asked to determine a potential juror's attitudes and biases. In the present case the defendant was afforded broad latitude during jury selection. For example, he was able to determine jurors' attitudes about the death penalty by asking, *inter alia*, whether they had "any conscientious, moral or religious objections to the infliction of the death penalty." By asking such questions the defendant was able to determine potential jurors' beliefs about capital punishment without intrusive delving into their private religious beliefs. Since the defendant was able to elicit the information necessary to select competent, fair and impartial jurors without questioning potential jurors about their personal religious beliefs and affiliations, we conclude that the trial court did not abuse its discretion in limiting *voir dire* questioning of prospective jurors as to their religious affiliations. *Cf. State v. Huffstetler*, 312 N.C. 92, 322 S.E. 2d 110 (1984) (not error to prevent defendant from asking prospective jurors about views of their church leaders), *cert. denied*, 471 U.S. 1009, 85 L.Ed. 2d 169 (1985).

We also note that the defendant in the present case failed to exhaust his peremptory challenges. The record indicates that the defendant was not forced to accept any juror objectionable to him, since he still had two peremptory challenges remaining after the last juror was accepted. The defendant has, therefore, failed to show any possible prejudice resulting from the trial court's rulings regarding jury selection and may not now be heard to com-

plain. *See, e.g., State v. Wilson,* 313 N.C. 516, 524-25, 330 S.E. 2d 450, 457 (1985). This assignment of error is overruled.

[2]  The defendant by his next assignment of error contends that two of the jurors challenged for cause due to their opposition to capital punishment may have been improperly dismissed in violation of the standard established in *Witherspoon v. Illinois,* 391 U.S. 510, 21 L.Ed. 2d 776 (1968). In *Wainwright v. Witt,* 469 U.S. 412, 83 L.Ed. 2d 841 (1985), the Supreme Court clarified *Witherspoon* and held that the proper standard for determining whether a prospective juror may be excluded for cause due to views concerning the death penalty is "whether the juror's views 'would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " 469 U.S. at 433, 83 L.Ed. 2d at 851-52 (quoting *Adams v. Texas,* 448 U.S. 38, 45, 65 L.Ed. 2d 581, 589 (1980) ). We have carefully examined the *voir dire* testimony of each of the two jurors whom the defendant contends were improperly excluded. Their answers to the prosecutor's questions clearly disclosed that they could not follow the law or instructions of the trial court, if to do so would result in a death sentence. Therefore, they were properly excluded under the standard set out in *Witt.* This assignment of error is without merit and is overruled.

[3]  The defendant next contends that the trial court erred in admitting over objection the contents of a letter from the Employment Security Commission found on the victim's desk. This letter stated that the defendant had been discharged from the victim's employ, and it was offered by the State as evidence of the defendant's motive for killing Cornwell. The defendant objected to the admission of the contents of the letter as being irrelevant and because no proper foundation for its admissibility had been established.

Even if it is assumed *arguendo* that the evidence was inadmissible, this assignment of error is not properly before this Court. On cross-examination Leona Cornwell, the victim's wife, testified without objection that the defendant had been fired from the Murphy Laundry. Where evidence is admitted over objection, but the same or similar evidence has been admitted previously or is admitted subsequently without objection, the benefit of the objection is lost, and the defendant is deemed to have waived his

right to assign as error the admission of the evidence. *State v. Wilson,* 313 N.C. 516, 330 S.E. 2d 450; *State v. Corbett,* 307 N.C. 169, 297 S.E. 2d 553 (1982); *State v. Chapman,* 294 N.C. 407, 241 S.E. 2d 667 (1978). We therefore overrule this assignment of error.

[4] The defendant next assigns as error the trial court's exclusion of hearsay evidence of certain exculpatory statements made by him as he emerged from the scene of the crime. On direct examination, Grier Ivie testified that he went across the street to the Murphy Laundry after the defendant ran out of the laundry waving his arms and hollering. On cross-examination, the defendant attempted to present evidence of the statements he made to Ivie to the effect that the defendant found the victim's body on the floor and turned it over. The trial court ruled that the evidence was inadmissible. The defendant contends that evidence of these statements was admissible because his statements were excited utterances under N.C.G.S. § 8C-1, Rule 803(2).

It is well established that a trial court's ruling on an evidentiary point will be presumed to be correct unless the complaining party can demonstrate that the particular ruling was in fact incorrect. *State v. Milby,* 302 N.C. 137, 273 S.E. 2d 716 (1981). Even if the complaining party can demonstrate that the trial court erred in its ruling, relief will not be granted absent a showing of prejudice. *Id.;* N.C.G.S. § 15A-1443(a) (1983). "A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached." *Id.* In the present case, even if it is assumed *arguendo* that the exclusion of testimony as to the defendant's self-serving statements was erroneous, we conclude that the defendant has not shown that he was prejudiced.

The evidence presented at trial tended to show that the defendant had been fired from the victim's employ sometime during February, 1985. The defendant was very familiar with the operating schedule of Murphy Laundry and knew that Cornwell always worked alone on Tuesdays. Witnesses testified that the defendant was the only person seen going into Murphy Laundry during the fifteen minute period between the time the victim was last seen alive and the time he was found murdered. A bloody

knife, positively identified as the defendant's, was recovered from the crime scene. Bloody shoe prints matching the "grid" pattern of the defendant's shoes were found all over the laundry floor and on the victim's forehead. Moreover, a bloodstained fifty-dollar bill folded in the same unusual manner as those in the victim's wallet was seized from the defendant after his arrest. In light of the overwhelming evidence of the defendant's guilt, we conclude that there is no reasonable possibility that, had the statements he made when he ran out of the laundry been admitted into evidence, a different result would have been reached at trial. Thus, any possible error in this regard was harmless in light of the other evidence properly admitted at trial, and the defendant's assignment of error is overruled. *See, e.g., State v. Morgan,* 315 N.C. 626, 640, 340 S.E. 2d 84, 93 (1986).

## II.

### SENTENCING PHASE

In the defendant's next assignment of error he contends that the trial court erred by refusing to submit two nonstatutory mitigating circumstances to the jury for their consideration and by, instead, submitting the statutory mitigating circumstance of "no significant history of prior criminal activity." N.C.G.S. § 15A-2000 (f)(1) (1983).

During the penalty phase, the defendant tendered to the trial court a list of mitigating circumstances including, *inter alia,* the defendant had no prior record of capital offenses and the defendant had not been convicted of a felony in the last ten years. In support of these mitigating circumstances, the defendant offered into evidence a certified copy of his criminal record in Cherokee County, North Carolina, which consisted of a series of convictions for being drunk in public, being drunk and disorderly and for driving under the influence. In rebuttal, the State offered into evidence certified copies of two Michigan convictions for felonies committed by the defendant in 1965 and 1966. After reviewing the evidence, the trial court submitted the following eight mitigating circumstances for the jury's consideration: (1) the defendant has no significant history of prior criminal offenses; (2) since his arrest, the defendant has shown no tendencies of violence towards others; (3) since his arrest, the defendant has abided by

the rules and regulations of the Cherokee County Jail; (4) the defendant has adapted well to life as a prisoner; (5) the defendant has suffered from episodic alcohol abuse since 1973; (6) the defendant has been a loving and affectionate son to his mother; (7) the defendant has been a loving and affectionate father to his son; (8) any other circumstances arising from the evidence which the jury deems to have mitigating value.

The defendant contends that the trial court committed prejudicial error of a constitutional dimension by refusing to submit the nonstatutory mitigating circumstances relating to the defendant's criminal record and by submitting, over the defendant's objection, the statutory mitigating circumstance of "no significant history of prior criminal activity." The defendant argues that the trial court's ruling deprived him of his constitutionally guaranteed rights of effective assistance of counsel, due process of law and freedom from cruel and unusual punishment. We disagree.

[5] First, we consider and reject the defendant's argument that the trial court erred in submitting, over his objection, the statutory mitigating circumstance of "no significant history of prior criminal activity." N.C.G.S. § 15A-2000(b) which controls the submission of aggravating and mitigating circumstances in capital cases states:

> Instructions determined by the trial judge to be *warranted by the evidence shall be given* by the court in its charge to the jury prior to its deliberation in determining sentencing. In all cases in which the death penalty may be authorized, the judge *shall include* in his instructions to the jury that it *must consider* any aggravating circumstance or circumstances or mitigating circumstance or circumstances from the lists provided in subsections (e) and (f) which *may be supported by the evidence*, and shall furnish to the jury a written list of issues relating to such aggravating or mitigating circumstance or circumstances.

N.C.G.S. § 15A-2000(b) (1983) (emphasis added).

When evidence is presented in a capital case which may support a statutory mitigating circumstance, the trial court is mandated by the language in N.C.G.S. § 15A-2000(b) to submit that

circumstance to the jury for its consideration. Once the trial court determines that the jury could reasonably find a mitigating circumstance, the statute affords the trial court no discretion in submitting the mitigating circumstance. Our review of this issue is, therefore, limited to determining whether there was evidence in the present case which would support a reasonable finding of the mitigating circumstance of "no significant history of prior criminal activity." We conclude that in the case at bar such evidence was present and, under the mandates of N.C.G.S. § 15A-2000(b), the trial court was correct in submitting this mitigating circumstance for consideration.

N.C.G.S. § 15A-2000(b) unequivocally sets forth the legislature's intent that in every case the jury be allowed to consider all statutory aggravating or mitigating circumstances which the jury might reasonably find supported by the evidence. It is clear that the legislature did not intend that the State or the defendant be allowed to limit in any way the jury's consideration of these statutorily established aggravating and mitigating circumstances. Allowing jurors to consider and weigh all of the statutory aggravating and mitigating circumstances which they reasonably might find supported by the evidence is the only way to ensure that juries distinguish cases in which the death penalty properly may be imposed from those in which it may not be imposed.

In the present case, the defendant's criminal record included two felony convictions. In 1965 the defendant, then age twenty-three, was convicted in Michigan of "assault with intent to rob not being armed." In 1966, the defendant was convicted in Michigan of "breaking and entering a business place with intent to commit larceny." From 1966 until the time of Cornwell's murder in 1985, the defendant was not charged with any serious criminal violations. During the years 1973-1984 the defendant was, however, convicted of seven alcohol-related misdemeanors. We do not suggest that the evidence in the present case would support a finding of *no* history of prior criminal activity. N.C.G.S. § 15A-2000(b) does not require such evidence before the mitigating circumstance must be submitted for the jury's consideration. Rather, the statute places upon the trial court the duty to determine whether the evidence will support a reasonable finding of the mitigating circumstance of "no *significant* history of

prior criminal activity." In the case at bar, the trial court was required to consider the evidence of the defendant's misdemeanor convictions in conjunction with his twenty-year-old felony convictions to determine whether his record as a whole would support a reasonable jury finding of the mitigating circumstance of "no significant history of prior criminal activity." The trial court correctly concluded that the evidence in this case would support such a finding.

A review of the defendant's record reveals that his only felony convictions occurred almost twenty years before his trial in the present case. This passage of time coupled with the fact that the defendant had no subsequent felony convictions tended to lessen the significance of his criminal activities. Further, all of the defendant's misdemeanor convictions were alcohol related, e.g., public drunkenness and driving while under the influence. The fact that the evidence tended to show that the defendant had suffered from episodic alcohol abuse since 1973 further tended to lessen the significance of the defendant's alcohol-related misdemeanor convictions. For these reasons, we conclude that the trial court was correct in its view that a jury could reasonably find the mitigating circumstance of "no *significant* history of prior criminal activity" and that the trial court was correct in submitting that factor for consideration in the present case.

[6] We now consider the defendant's argument that the trial court committed prejudicial error in refusing to submit the non-statutory mitigating circumstances that the defendant had no prior record of capital offenses and that the defendant had not been convicted of a felony in the last ten years. Generally, a defendant is entitled to have a jury consider any circumstance that may have mitigating value. *State v. Zuniga*, 320 N.C. 233, 357 S.E. 2d 898 (1987). Our legislature ensured that a defendant would have the benefit of every circumstance having mitigating value by providing that the jury always consider, in addition to other statutory mitigating circumstances, "[a]ny circumstance arising from the evidence which the jury deems to have mitigating value." N.C.G.S. § 15A-2000(f)(9) (1983).

By submitting for the jury's consideration the statutory mitigating circumstance of "no significant history of prior criminal activity" the trial court allowed the jury to consider the

defendant's criminal record as a whole. In so doing, the trial court insured that the jury had at its disposal all of the information necessary to weigh the "significance" of or importance of the defendant's complete prior criminal record. The jury could see from a review of the defendant's record that he had not been convicted of any felonies for a period of ten years, that he had no prior record of capital offenses and any number of other points that they may have found favorable to the defendant. The submission of the mitigating circumstance "no significant history of prior criminal activity" coupled with the submission of the mitigating circumstance "any other circumstances arising from the evidence which the jury deems to have mitigating value" afforded the jury the flexibility necessary to give the defendant the benefit of any parts of his record it deemed of mitigating value. In light of the authority given to the jury to consider any and all facts of mitigating value, we conclude that the trial court properly instructed the jury regarding mitigating circumstances to be considered concerning the defendant's prior criminal record. For the foregoing reasons, we overrule this assignment of error.

[7]  The defendant next assigns as error the trial court's exclusion of a psychological evaluation prepared by Dorothea Dix Hospital regarding the defendant's competency to stand trial. Twice during the penalty phase the defendant sought to introduce this report as evidence in support of the nonstatutory mitigating circumstance that the defendant had suffered from episodic alcohol abuse since 1973. The defendant contends that the report was admissible under N.C.G.S. § 8C-1, Rule 803(8)(c) (public records exception to the hearsay rule). Even assuming *arguendo* that the psychological evaluation was admissible, we conclude that its exclusion was harmless. The purpose for introducing the psychological evaluation was to establish the mitigating circumstance regarding the defendant's alcohol abuse. Only one brief notation in the report mentioned this condition. Since the jury found as a mitigating circumstance that the defendant had suffered from episodic alcohol abuse since 1973, the omission of this evidence could not have prejudiced the defendant. This assignment of error is overruled.

[8]  The defendant next contends that the trial court erred by denying his motion for funds to hire a private psychologist to aid him in preparation and presentation of evidence during the penal-

ty phase of the trial. The defendant bases his entitlement to such help upon N.C.G.S. § 7A-450(b) which provides for the State to furnish an indigent defendant "with counsel and the other necessary expenses of representation," and N.C.G.S. § 7A-454, which provides that the trial court may in its discretion "approve a fee for the service of an expert witness who testifies for an indigent person, . . . ." *See State v. Gardner*, 311 N.C. 489, 498, 319 S.E. 2d 591, 599 (1984).

On 25 June 1985, the defendant moved for the appointment of an expert to examine the defendant for the purposes of determining his "present state of mental health." By order dated 26 June 1985, the defendant was committed to Dorothea Dix Hospital to determine his capacity to stand trial. The psychiatrist's report, made available to the parties, indicated that the defendant was competent to stand trial and that there was "nothing to suggest that [the defendant] would not be responsible for his actions."

On 5 July 1985, the defendant moved that funds be made available to hire a private psychologist or psychiatrist to assist him in the investigation of potential mitigating circumstances for the penalty phase of the trial. Following a hearing, the trial court denied this motion.

It is well established in this jurisdiction that the issue of whether a private psychiatrist should be appointed under N.C.G.S. §§ 7A-450(b) and 7A-454 to assist an indigent defendant ordinarily rests within the sound discretion of the trial court. *State v. Tatum*, 291 N.C. 73, 229 S.E. 2d 562 (1976). Experts should be provided under those statutes only when there is a reasonable likelihood that they will materially assist the defendant in the preparation of his defense or that without such help it is probable that the defendant will not receive a fair trial. *State v. Gray*, 292 N.C. 270, 278, 233 S.E. 2d 905, 911 (1977); *see also State v. Williams*, 304 N.C. 394, 284 S.E. 2d 437 (1981), *cert. denied*, 456 U.S. 932, 72 L.Ed. 2d 450 (1982). Further, neither the state nor the federal constitution requires that expert assistance always be made available simply for the asking.

The defendant concedes that he did not make a sufficient showing to require the trial court to authorize funds for a private psychologist or psychiatrist to assist him in the guilt-innocence phase of the trial. He argues, however, that he made a showing

sufficient to establish a constitutional right to the employment, at State expense, of a psychiatric expert to assist him in preparing and presenting evidence concerning mitigating circumstances during the sentencing phase of his trial.

In support of this argument, the defendant relies upon *Ake v. Oklahoma*, 470 U.S. 68, 84 L.Ed. 2d 53 (1985), and *State v. Gambrell*, 318 N.C. 249, 347 S.E. 2d 390 (1986). Both *Ake* and *Gambrell* held that:

> when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue, if the defendant cannot otherwise afford one.

*Ake*, 470 U.S. at 74, 84 L.Ed. 2d at 60, *quoted in Gambrell*, 318 N.C. at 255, 347 S.E. 2d at 393. The defendant argues that we should expand the holdings of *Ake* and *Gambrell* and hold here that due process requires the State to provide an indigent defendant access to a psychiatrist's assistance for the preparation and presentation of his case in the penalty phase of a capital trial, when he has made a showing that a mitigating circumstance relating to his mental condition will be a significant factor. We find it unnecessary to decide in this case whether the holdings of *Ake* and *Gambrell* may be expanded in any such fashion.

Assuming, *arguendo*, that *Ake* and *Gambrell* require the State to provide the defendant psychiatric assistance in the preparation and presentation of evidence as to mitigating circumstances concerning his mental condition, the defendant still has the burden of making the necessary showing *to the trial court* at the time of his motion that such mitigating circumstances will likely be significant factors during the sentencing phase. *Ake*, 470 U.S. at 83, 84 L.Ed. 2d at 66. Here, the defendant failed to make the necessary showing in the trial court.

On 5 July 1985, the defendant filed a motion for funds to hire a psychiatrist or psychologist to examine him and assist him in the investigation of potential defenses and potential mitigating circumstances. A pretrial hearing was held on 25 July 1985, at which time the trial court considered this and other motions. At the hearing, counsel for the defendant tendered the psychiatric

report finding the defendant competent to stand trial and stated the following:

> Also, in a separate Motion, Motion For The Payment Of Fees For A Psychological Examination Of Defendant. Whether or not he has the intent and so forth necessary to formulate the elements of this crime, but also in the sentencing phase may it please the Court. I believe the Court is fully aware of the mitigating circumstances and the Defendant's right to introduce anything basically that he feels might be in mitigation of this matter. There has been a psychological examination done or at least allegedly a psychological examination done down at Dorothea Dix Hospital. If I could hand that up to the Court as part of this argument and ask that it be made a part of this Motion. We would say to the Court that that amounts to, we would say that that amounts to nothing. We got the Defendant down there one or two days I think he arrived in the afternoon they kept him one day and he was back on his way to Franklin the next day may it please the Court. There was no IQ testing done, there is no history given in that report. All it basically says is that we talked to him and he said he didn't do it and we think he was in good shape. We think he is rightfully and constitutionally entitled to more than that may it please the Court, by way of psychological evaluation and examination. He is indigent, he can't have it, if he had money he would pay it, we think he is entitled to it and we certainly think he is entitled to more than he is given in this report. We have also been contacting psychologists, as I think we outlined in that Motion who is available, has agreed to this and is ready, willing, and able, and we think that this certain request should not be taken lightly and we think it is essential to our case as I've said before, not only for the guilt phase but as far as the sentencing phase as well, your honor. And by that I am not abandoning the request for the psychologist aid in the selection of the jury, but these are two separate things, may it please the Court, the same would possibly be utilized but is not one in the same.

This "showing" before the trial court in support of the motion was entirely inadequate.

Even assuming *arguendo* the applicability of the rationale of *Ake* and *Gambrell* to motions for psychiatric assistance in the preparation and presentation of evidence concerning mitigating circumstances at the sentencing phase, the "showing" before the trial court in the present case is a far cry from the showing made in those cases. In both *Ake* and *Gambrell*, the defendants informed the trial court prior to trial that they would rely upon the insanity defense. In *Ake*, the trial court knew that the defendant had been diagnosed by a psychiatrist as being a paranoid schizophrenic who, because of his illness, was dangerous, was subject to rages, and was required to be confined within the maximum security facility of a psychiatric hospital. *Ake*, 470 U.S. at 71, 84 L.Ed. 2d at 58-59. In *Gambrell*, similar evidence was introduced in the trial court in support of Gambrell's motion for psychiatric assistance. *Gambrell*, 318 N.C. at 253-55, 347 S.E. 2d at 392.

In the present case, counsel for the defendant merely tendered to the Court a psychiatric evaluation which included a notation that the defendant had suffered from episodic alcohol abuse. The only other "showing" made in support of the motion was defense counsel's statement to the effect that he felt the examination had been inadequate and that the defendant was "constitutionally entitled to more . . . ." This "showing" by the defendant fell far short of a demonstration to the trial court that his mental condition at the time of the offense was likely to be a significant factor during the sentencing phase of his trial. *See Ake v. Oklahoma*, 470 U.S. at 74, 84 L.Ed. 2d at 60; *State v. Gambrell*, 318 N.C. at 255, 347 S.E. 2d at 393. Certainly, this "showing" was entirely inadequate to meet the defendant's statutory burden to show "a reasonable likelihood that [the expert] would materially aid in the preparation of his defense." *State v. Gray*, 292 N.C. at 278, 233 S.E. 2d at 911. The trial court did not err in denying the defendant's motion, given the paucity of the showing made by the defendant prior to the trial court's ruling on the motion.

[9] The defendant next assigns as error the submission for the jury's consideration of the aggravating circumstance that the killing was "especially heinous, atrocious, or cruel." N.C.G.S. § 15A-2000(e)(9) (1983). He contends that the evidence did not support the existence of this aggravating circumstance and that he is, therefore, entitled to a new sentencing hearing. We do not agree.

Although every murder may be characterized as heinous, atrocious, and cruel, our legislature has made it clear that this aggravating circumstance may be found only in cases in which the first-degree murder committed was either *especially* heinous, *especially* atrocious, or *especially* cruel. N.C.G.S. § 15A-2000(e)(9) (1983). Therefore, a finding that this statutory aggravating circumstance exists is permissible when the level of brutality involved exceeds that normally found in first-degree murder or when the first-degree murder in question was conscienceless, pitiless or unnecessarily torturous to the victim. *State v. Goodman*, 298 N.C. 1, 257 S.E. 2d 569 (1979). We have also stated that this circumstance is present when the killing demonstrates an unusual depravity of mind on the part of the defendant beyond that normally present in first-degree murder. *State v. Stanley*, 310 N.C. 332, 345, 312 S.E. 2d 393, 401 (1984).

In *State v. Oliver*, 309 N.C. 326, 307 S.E. 2d 304 (1983), we identified two of the types of first-degree murders which would warrant the submission of the especially heinous, atrocious, or cruel aggravating circumstance to the jury. One type consists of killings which are physically agonizing for the victim or which are in some other way dehumanizing. The other type consists of those killings which are less violent, but involve the infliction of psychological torture, including placing the victim in agony in his last moments, aware of, but helpless to prevent, impending death.

In determining whether the evidence is sufficient to support a finding of essential facts which would support a determination that a murder was "especially heinous, atrocious, or cruel," the evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom. *State v. Moose*, 310 N.C. 482, 313 S.E. 2d 507 (1984).

The evidence in the instant case supported a finding that the level of brutality exceeded that normally found in first-degree murder cases and that it was pitiless and unnecessarily torturous to the victim. The evidence taken in the light most favorable to the State tended to show that the defendant entered Murphy Laundry at a time when he knew the victim would be working alone. During the struggle in which Cornwell attempted to fend off the defendant's blows, Cornwell was stabbed seventeen times.

After Cornwell lay fatally wounded on the floor, the defendant kicked him about the head and shoulders with such force as to cause the victim's brain to swell and hemorrhage and ultimately cause his death. Evidence further tended to show that the victim did not die immediately; rather, he lingered for at least five to ten minutes before dying. We have repeatedly held, in factual situations comparable to the present one, that the "especially heinous, atrocious, or cruel" aggravating circumstance is properly submitted where there is evidence that the killing involved a prolonged death or was committed in a fashion beyond that necessary to effect the victim's death. *See, e.g., State v. Reese*, 319 N.C. 110, 353 S.E. 2d 352 (1987). In the present case the evidence was sufficient to support the jury's finding of the aggravating circumstance that the first-degree murder was "especially heinous, atrocious, or cruel" beyond a reasonable doubt. N.C.G.S. § 15A-2000(c)(1) (1983) (for imposition of death sentence, aggravating circumstances must be found beyond a reasonable doubt). Therefore, defendant's assignment of error is overruled.

[10] In his remaining assignments of error concerning the sentencing phase of his trial, the defendant asks this Court to reconsider issues we have recently resolved. First, the defendant argues that requiring jurors to reach unanimous decisions regarding the presence of mitigating circumstances deprives him of his right to a reliable sentencing hearing, his right to due process of law and his right to be free from cruel and unusual punishment. We have recently rejected this argument. *State v. Brown*, 320 N.C. 179, 358 S.E. 2d 1 (1987). We decline to overrule our recent holding in *Brown*.

[11] Second, the defendant requests that we reject our holding in *State v. Barfield*, 298 N.C. 306, 353-54, 259 S.E. 2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L.Ed. 2d 1137, *reh'g denied*, 448 U.S. 918, 65 L.Ed. 2d 1181 (1980), *reh'g denied*, 454 U.S. 1117, 70 L.Ed. 2d 655 (1981), and hold, instead, that the concept of due process requires the State to disprove beyond a reasonable doubt the existence of mitigating circumstances. We decline to do so. Due process does not prohibit placing upon the defendant the burden of proving mitigating circumstances by a preponderance of the evidence. *State v. Brown*, 320 N.C. at 216, 358 S.E. 2d at 25.

State v. Lloyd

[12] Third, the defendant argues that the trial court erred in prohibiting him from arguing to the jury that if it could not agree upon a sentence, a life sentence would be imposed. In *State v. Johnson*, 317 N.C. 343, 346 S.E. 2d 596 (1986), we held that it is improper for the jury to be told that a sentence of life imprisonment will be imposed upon the defendant in the event that the jury is unable to reach unanimous agreement on the proper sentence to recommend. The defendant has brought forth no arguments that persuade us to overrule our decision in *Johnson*. This assignment is, therefore, overruled.

[13] Finally, the defendant asks that we overrule a long line of cases in which we have held that the "especially heinous, atrocious, or cruel" aggravating circumstance of N.C.G.S. § 15A-2000(e)(9) is consistent with the mandates of our state and federal constitutions. *E.g., State v. Stanley*, 310 N.C. at 332, 312 S.E. 2d at 393; *State v. Martin*, 303 N.C. 246, 278 S.E. 2d 214, *cert. denied*, 454 U.S. 983, 70 L.Ed. 2d 240 (1981). We decline to do so. We have reviewed our interpretation of N.C.G.S. § 15A-2000(e)(9), and we again conclude that the statute is neither unconstitutionally vague nor overbroad. This assignment of error is overruled.

III.

STATUTORY REVIEW OF SENTENCE BY SUPREME COURT

[14] Having determined that the defendant's trial was free from prejudicial error during the guilt-innocence and sentencing phases, we turn to duties reserved by statute for this Court in reviewing the judgment and sentence of death. N.C.G.S. § 15A-2000(d)(2) (1983). We must ascertain whether the record supports the jury's findings of the aggravating circumstances on which the sentence of death was based; whether the death sentence was imposed under the influence of passion, prejudice, or other arbitrary circumstance; and whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. *Id.*

We have thoroughly examined the record, transcripts, and briefs in this case. We have also closely examined those exhibits which were forwarded to the Court. We find that the record fully supports the submission of the aggravating circumstances which were considered and found by the jury. Further, we find no in-

dication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary circumstance.

We now undertake our final statutory duty of proportionality review. This duty requires the Court to determine whether the death sentence in this case is excessive or disproportionate to the penalty imposed in similar cases, considering the crime and the defendant.

> In essence, our task on proportionality review is to compare the case at bar with other cases in the pool which are roughly similar with regard to the crime and the defendant, such as, for example, the manner in which the crime was committed and defendant's character, background, and physical and mental condition. If, after making such a comparison, we find that juries have consistently been returning death sentences in the similar cases, then we will have a strong basis for concluding that a death sentence in the case under review is not excessive or disproportionate.

*State v. Lawson*, 310 N.C. 632, 648, 314 S.E. 2d 493, 503 (1984), *cert. denied*, 471 U.S. 1120, 86 L.Ed. 2d 267 (1985).

In conducting this review, we use *all* of the cases in the "pool" of similar cases announced in *State v. Williams*, 308 N.C. 47, 301 S.E. 2d 335, *cert. denied*, 464 U.S. 865, 78 L.Ed. 2d 177, *reh'g denied*, 464 U.S. 1004, 78 L.Ed. 2d 704 (1983). *See also State v. Jackson*, 309 N.C. 26, 45, 305 S.E. 2d 703, 717 (1983). Although the "pool" is used for comparison purposes, in every proportionality review, this Court's emphasis is on an "independent consideration of the individual defendant and the nature of the crime or crimes which he has committed." *State v. Pinch*, 306 N.C. 1, 36, 292 S.E. 2d 203, 229, *cert. denied*, 459 U.S. 1056, 74 L.Ed. 2d 622 (1982), *reh'g denied*, 459 U.S. 1189, 74 L.Ed. 2d 1031 (1983). In *Williams*, we expressly rejected any approach that would utilize "mathematical or statistical models . . . ." *Williams*, 308 N.C. at 80, 301 S.E. 2d at 355. We indicated our view that reliance upon any such quantitative analysis would tend to deny the defendant "the constitutional right to 'individualized consideration' as that concept was expounded in *Lockett v. Ohio*, 438 U.S. 586, 604-05, 98 S.Ct. 2954, 2964-65, 57 L.Ed. 2d 973 (1978) (Burger, C.J., plurality opinion)." *State v. Williams*, 308 N.C. at 81, 301 S.E. 2d at 356. Instead, we said that we would "rely upon our own case reports

---

**State v. Lloyd**

---

in the 'similar cases' forming the pool" in order to carry out this review. *Id.*

In the present case, the defendant was convicted by the jury of first-degree murder on the basis of premeditation and deliberation. The jury found two aggravating circumstances: (1) the murder was especially heinous, atrocious, or cruel; and (2) the murder was committed by the defendant while he was engaged in the commission of or an attempt to commit robbery. The jury found four mitigating circumstances: (1) Since the arrest of the defendant for the murder, the defendant had shown no tendencies of violence toward others; (2) Since the arrest of the defendant, he had abided by the rules and regulations of the Cherokee County Jail; (3) The defendant had adapted well to life as a prisoner; and (4) The defendant had suffered from episodic alcohol abuse since 1973. Having compared the first-degree murder and the defendant in this case with those in the pool of similar cases we use for proportionality review, we conclude that, as is so often the situation we face, no case in the pool arose from identical facts or involved a situation in which the jury, as here, convicted the defendant of premeditated and deliberate murder and found the identical aggravating and mitigating circumstances found by the jury in this case.

Where juries have found either the aggravating circumstance that the first-degree murder was especially heinous, atrocious, or cruel or the aggravating circumstance that the murder was committed during the commission of a robbery, juries have not consistently recommended either life or death sentences. *See generally State v. Stokes*, 319 N.C. 1, 352 S.E. 2d 653 (1987). This is not surprising and, indeed, was anticipated by this Court in *Williams*, since the nature of the crime and the defendant will vary markedly from case to case. *See generally State v. Williams*, 308 N.C. 47, 301 S.E. 2d 335.

We turn then to a comparison of the present case with cases in which this Court has ruled upon the proportionality issue. This case is not closely similar to any of the cases in which this Court has found the death penalty disproportionate and entered a sentence of life imprisonment. Each of those cases included facts not present here.

In *State v. Stokes*, 319 N.C. at 1, 352 S.E. 2d at 335, for example, the defendant was convicted solely on a felony murder theory, and the majority of this Court felt there was little or no evidence of a premeditated killing. Here, the defendant was convicted of murder by premeditation and deliberation and, additionally, of robbery. *Stokes* is also easily distinguishable from the present case because Stokes' co-defendant, whom the majority of this Court seemed to believe more culpable than Stokes, was sentenced to life imprisonment.

In *State v. Rogers*, 316 N.C. 203, 341 S.E. 2d 713 (1986), the only aggravating circumstance found by the jury was that the murder for which Rogers was convicted was part of a course of conduct which included the commission of violence against another person or persons. This Court was of the view that the murder in *Rogers*, unlike that in the present case, did not evidence the viciousness and cruelty present in cases in which juries had recommended death. Therefore, the death sentence was vacated and a sentence of life imprisonment was imposed.

In *State v. Young*, 312 N.C. 669, 325 S.E. 2d 181 (1985), the defendant was convicted of first-degree murder, first-degree burglary and robbery with a dangerous weapon. The jury found as aggravating circumstances that the murder was committed during the commission of a robbery or burglary and that it was committed for pecuniary gain. Unlike the present case, the jury considered but rejected the aggravating circumstance that the murder was especially heinous, atrocious, or cruel.

In *State v. Hill*, 311 N.C. 465, 319 S.E. 2d 163 (1984), the defendant was convicted of first-degree murder. The single aggravating circumstance found was that the murder was committed against a law enforcement officer engaged in the performance of his official duties. The officer had chased down the defendant on foot, and the two men had struggled until the officer was shot with his own weapon. This Court felt that:

> Given the somewhat speculative nature of the evidence surrounding the murder here, the apparent lack of motive, the apparent absence of any simultaneous offenses, and the incredibly short amount of time involved, together with the jury's finding of three mitigating circumstances tending to show defendant's lack of past criminal activity and his being

State v. Lloyd

gainfully employed, and the unqualified cooperation of defendant during the investigation, we are constrained to hold as a matter of law that the sentence imposed here is disproportionate within the meaning of G.S. 15A-2000(d)(2).

*Id.* at 479, 319 S.E. 2d at 172. It is readily apparent that both the facts and the aggravating and mitigating circumstances in *Hill* were entirely unlike those in the present case.

In *State v. Bondurant*, 309 N.C. 674, 309 S.E. 2d 170 (1983), the evidence tended to show that the defendant and a group of drunken friends were riding in a car when the defendant taunted the victim by telling him he would shoot him and questioning whether the victim believed the defendant would shoot him. The defendant shot the victim, then directed the driver to proceed immediately to the emergency room of the local hospital. The jury found as aggravating circumstances that the crime was especially heinous, atrocious, or cruel, and that it was a part of a course of conduct including crimes of violence against other persons.

In concluding that the death penalty was disproportionate in *Bondurant*, this Court emphasized that, unlike the present case, the murder was not committed in the perpetration of another felony, and the defendant did not calculate the commission of the crime over a significant period of time. This Court also emphasized that the evidence indicated that the defendant and his companions were highly intoxicated at the time of the killing, that there was no apparent motive for the killing, and that the defendant sought immediate medical attention for the deceased. Although the evidence in the present case could be viewed as showing that the defendant sought assistance for the victim, the evidence also would have supported the jury in believing that this was merely a ruse by the defendant in an effort to remove suspicion from himself after he knew that his crime was about to be discovered and that his victim was already dead. Otherwise, the facts in *Bondurant* were entirely unlike the facts in the present case.

In *State v. Jackson*, 309 N.C. 26, 305 S.E. 2d 703 (1983), the defendant was on foot and waved down the victim as the victim passed in his truck. Not long thereafter, the victim's body was discovered in the truck. He had been shot twice in the head, and his wallet was gone.

In finding the sentence of death disproportionate, this Court stated that:

> A primary reason for this result is that there is no evidence of what occurred after defendant left with [the victim]. The crime was heinous, but there is no evidence to show that it was "especially heinous" within the meaning of the statute.

*Id.* at 46, 305 S.E. 2d at 717. As previously discussed in this opinion, the evidence in the present case was more than sufficient to establish the aggravating circumstance that the first-degree murder was especially heinous, atrocious, or cruel. Therefore, our holding that the death sentence was disproportionate in *Jackson* is of little assistance in our proportionality review in the present case.

We turn next to the cases in which we have found the death penalty to be proportionate. Although we review all of the cases in the pool when engaging in our statutorily mandated duty of proportionality review, we have indicated that we will not undertake to discuss or cite all of those cases each time we carry out that duty. *State v. Williams,* 308 N.C. at 81, 301 S.E. 2d at 356. Here, we note that the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the sentence of death disproportionate. *E.g., State v. Huffstetler,* 312 N.C. 92, 322 S.E. 2d 110 (1984) (victim battered to death by multiple heavy blows of an iron skillet), *cert. denied,* 471 U.S. 1009, 85 L.Ed. 2d 169 (1985); *State v. Lawson,* 310 N.C. 632, 314 S.E. 2d 493 (1984) (murder of elderly victim in his home), *cert. denied,* 471 U.S. 1120, 86 L.Ed. 2d 267 (1985); *State v. McDougall,* 308 N.C. 1, 301 S.E. 2d 308 (victim stabbed twenty-two times), *cert. denied,* 464 U.S. 865, 78 L.Ed. 2d 173 (1983); *State v. Williams,* 308 N.C. 47, 301 S.E. 2d 335 (sexual assault and murder of elderly victim in her home), *cert. denied,* 464 U.S. 865, 78 L.Ed. 2d 177, *reh'g denied,* 464 U.S. 1004, 78 L.Ed. 2d 704 (1983).

Having compared the crime and the defendant in this case to those in the pool of similar cases, we do not find the sentence of death entered here to be disproportionate. The evidence presented at trial supports the view that the defendant deliberately sought out and robbed the victim when he knew the victim would be alone in his laundry. The physical evidence tended to show

that the victim was stabbed seventeen times and repeatedly kicked about the head after he was on the floor in the prone position. The evidence indicates that the victim did not die immediately, but remained helpless on the floor awaiting his impending death for a minimum of five to ten minutes after sustaining the most significant blows.

Thus, the record before us reveals a senseless, exceptionally brutal and murderous assault. Having compared this case to others in the pool of similar cases: "We cannot say that it does not fall within the class of first degree murders in which we have previously upheld the death penalty." *State v. Brown*, 315 N.C. at 71, 337 S.E. 2d at 830.

We have dealt with all of the defendant's assigned errors. In addition, we have considered all of the trial proceedings which are in the record and transcript before us. We find no error.

No error.