STATE v. SEABERRY

[97 N.C. App. 203 (1990)]

---

STATE OF NORTH CAROLINA v. JERRY EDWARD SEABERRY

No. 8911SC332

(Filed 6 February 1990)

1. **Constitutional Law § 31 (NCI3d)— assault—request for psychiatrist and ballistics expert—denied**

    The trial court did not err in an assault prosecution by denying defendant's request for funds for a psychiatrist and a ballistics expert. A suspicion that the outcome of the psychiatric examination may be favorable is insufficient; where evidence other than defendant's confession exists, an indigent criminal defendant requesting a psychiatric expert must show

something more than the fact that he confessed and that his confession will be important in the State's case against him. Defendant here failed to make the specific evidentiary showing as outlined in *State v. Moore*, 321 N.C. 327; moreover, a psychiatrist had already been appointed in a separate prosecution in Wake County. While the ballistics testimony may have been important for the State to prove its case beyond a reasonable doubt, this fact alone is not sufficient to require the appointment of an independent expert and defendant presented no detailed evidence contradicting a psychiatrist's conclusion that he was capable of assisting in his defense. N.C.G.S. § 7A-450(b), N.C.G.S. § 7A-454.

**Am Jur 2d, Criminal Law §§ 955, 1006.**

2. **Constitutional Law § 66 (NCI3d) — assault — hearing on motions for state-appointed experts — defendant not present — no prejudicial error**

There was no prejudicial error in defendant's absence at a hearing on his motion for funds to obtain a psychiatrist and a ballistics expert where defendant made no showing that the motion's hearing would have been more reliable due to his physical presence or his contributions to the process of cross-examination. Even assuming that a hearing for a state-appointed expert is a critical stage requiring defendant's presence, defendant here waived his right to attend in that neither the record nor the transcript of the hearing revealed any indication that defendant wanted to be present, defense counsel never objected to defendant's absence, requested that defendant be transported to Johnston County for a hearing, or asked that the hearing be delayed until defendant could attend. Moreover, the right to be present at all critical stages of a trial is subject to harmless error analysis and the decision here had no effect on the outcome of the trial.

**Am Jur 2d, Criminal Law § 911.**

Judge BECTON concurring in part and dissenting in part.

APPEAL by defendant from judgment entered 20 October 1988 by *Judge Wiley F. Bowen* in JOHNSTON County Superior Court. Heard in the Court of Appeals 16 October 1989.

STATE v. SEABERRY

[97 N.C. App. 203 (1990)]

Defendant Seaberry was tried before a jury on charges of assault with a deadly weapon with intent to kill inflicting serious injury, assault with a firearm upon a law enforcement officer, and robbery with a dangerous weapon. The jury found defendant guilty of all charges. Judge Bowen arrested judgment on the conviction for assault on a law enforcement officer and imposed sentences of twenty years and forty years consecutively for the remaining felonious assault and armed robbery convictions. Defendant appealed.

The state presented evidence tending to show that on the evening of 28 March 1988 the Clayton Food Town was robbed of $4,666.25 by a person wearing a stocking over his head and carrying a gun. As the thief left the store, he shot a uniformed Clayton police officer three times. The store's assistant manager, a customer in the store, and the police officer provided essentially the same description of the intruder. Another witness gave the police a thorough description and the license number of the vehicle driven away by the perpetrator. Investigators traced the vehicle to a friend of the appellant's girlfriend, and then they located his girlfriend.

Seaberry's girlfriend testified that on the night of the robbery he came to her apartment, acted unusually interested in a television news report about the robbery, and gave her $250 in cash. Prior to 28 March 1988 appellant used cocaine excessively and on 28 and 29 March he was using cocaine. Appellant was driving a blue rental car on 30 March.

The state showed that on 29 March 1988 appellant rented a blue car with a Florida license plate tag from a car rental agency in Raleigh. That car was located by police early on 2 April at the Rock Hill, South Carolina Greyhound bus station. Police showed a bus station employee photographs of appellant. Although the employee could not recognize appellant's face, she stated an individual fitting his description had purchased a ticket to Detroit, Michigan on a bus scheduled to arrive there later that day. North Carolina authorities notified the Detroit Police Department of appellant's description and his expected time of arrival.

Detroit police officers arrested appellant at the Detroit Greyhound bus station as he exited an arriving bus. He was carrying a brown tote bag, which contained clothing and a "large amount" of money. The Detroit police also seized a small blue steel revolver containing .32 caliber ammunition.

North Carolina authorities questioned appellant in Detroit on 3 April. After being advised of his constitutional rights, appellant stated he robbed the Clayton Food Town and shot the police officer. According to the officers who interviewed Seaberry, he appeared normal, stated he understood his rights, and signed a waiver form to that effect. However, he also made a number of spontaneous statements that were not responsive to anything he was asked, such as "How about taking me home, man, and let me get a thing?" "Can you give me something for my stomach, man, a hit or something?" and "Are you the one that shot me in the plane, man?"

On the night of the shooting, State Bureau Investigation agents recovered from the crime scene a spent bullet. The SBI's expert in forensic firearms identification testified that in his opinion the spent .32 caliber projectile had been fired from the revolver recovered from the appellant.

Richard Michael Capadano spent about twelve hours in the company of appellant while in custody at Central Prison in Raleigh. During that time appellant told Capadano about committing the crimes in Clayton, being captured, making statements to the Detroit police, and of his plan to fake mental illness and a drug problem to get out of the charges against him.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Robin Perkins Pendergraft, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Constance H. Everhart, for defendant appellant.*

ARNOLD, Judge.

[1] Appellant first assigns error to the trial court's denial of his motion for funds to obtain the assistance of a psychiatrist and a ballistics expert to facilitate the preparation and presentation of his defense. The trial court found the testimonial and documentary evidence presented did not demonstrate the threshold showing of a "particularized need" necessary to obtain state funds for independent experts. *State v. Penley*, 318 N.C. 30, 51, 347 S.E.2d 783, 795 (1986). Appellant argues he made the threshold showing and asks for a new trial.

Under N.C.G.S. § 7A-450(b) and N.C.G.S. § 7A-454, the state must provide an indigent criminal defendant with counsel and other necessary expenses. To receive funds for a state-appointed expert,

appellant must show: (1) he will be deprived of a fair trial without the expert assistance, or (2) there is a reasonable likelihood the appointment will materially assist him in the preparation of his case. *State v. Moore*, 321 N.C. 327, 364 S.E.2d 648 (1988); *see State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986); *see Ake v. Oklahoma*, 470 U.S. 68, 84 L.Ed. 2d 533, 105 S.Ct. 1087 (1985). The decision whether or not to provide these expenses is within the sound discretion of the trial court and will not be overturned absent an abuse of discretion. *State v. Holden*, 321 N.C. 125, 362 S.E.2d 513 (1987), *cert. denied*, 486 U.S. 1061, 100 L.Ed. 2d 935, 108 S.Ct. 2835 (1988). In determining whether a defendant has made the requisite showing of a particularized need, the court "should consider all the facts and circumstances known to it at the time the motion for . . . assistance is made." *State v. Gambrell*, 318 N.C. 249, 256, 347 S.E.2d 390, 394 (1986). No bright-line rule applies here; instead, the showing demanded is flexible and to be resolved on a case-by-case basis. *See Moore*, 321 N.C. 327, 364 S.E.2d 648.

Appellant claims he needed a psychiatrist to evaluate the effect his cocaine addiction had on his mental capacity at the time the crimes were committed and at the time he made inculpatory statements to law enforcement officers. We agree with the trial court that appellant failed to make the threshold showing of specific necessity required here. A suspicion that the outcome of an examination may be favorable is insufficient to show a reasonable likelihood that an expert will materially assist a defendant in preparation of his defense. *Penley*, at 51, 347 S.E.2d at 795; *Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1, 86 L.Ed. 2d 231, 236 n.1 (1985) (denial of fingerprint and ballistics experts not denial of due process where defendant offered little more than undeveloped assertions).

Appellant argues *State v. Moore*, 321 N.C. 327, 364 S.E.2d 648, controls the determination before us. In *Moore*, an indigent defendant with an IQ of 51 was charged with first-degree sexual offense based almost entirely on his confession and the recovery of his palm print at the scene of the crime. The Supreme Court held the defendant had a constitutional right to psychiatric assistance to dispute the voluntariness of his confession and the right to the help of a fingerprint expert. *Moore*, at 327, 364 S.E.2d at 648.

The defendant in *Moore* established the requisite threshold by showing that: (1) because there was no positive identification

of the perpetrator in the case, the expert testimony and defendant's confession were crucial to the state's case; (2) due to defendant's mental retardation he had limited communication and reasoning ability and thus could not provide defense counsel with much assistance in making a defense; and (3) his confession was of questionable credibility. *Id.* at 335-37, 343, 364 S.E.2d at 652-53, 656.

Certain similarities exist between the case before us and *Moore*. In neither case could the perpetrator be positively identified; in both cases the accused person confessed to committing the crime; and, in both, questions existed concerning the competency of the accused. Nevertheless, we believe the situation here is distinguishable from *Moore*. First, the lack of an eyewitness to the perpetrator's identity standing alone is not sufficient to require the state to provide an indigent defendant with state funds for a psychiatrist in every situation where the state's case is partly dependent on defendant's confession. Where, as in the case before us, other evidence exists, an indigent criminal defendant requesting a psychiatric expert must show something more than the fact that he confessed and that his confession will be important in the state's case against him.

The confession and ballistics evidence were not as important to the state's case here as the confession and palm print were in *Moore*. Eyewitnesses at the scene described the perpetrator's physical build, his clothing, and the vehicle used in the crime. Using this and other information gathered during the ensuing investigation, officials immediately focused on appellant as the main suspect, tracked his movements from Clayton to Raleigh and Rock Hill, and finally apprehended him in Detroit. In addition to the descriptive evidence investigators gathered linking appellant to the crime, this evidence of flight from the scene implicates him, notwithstanding his confession and the ballistics information.

Moreover, while it has been demonstrated that appellant's confession is important to the state's case, unlike the defendant in *Moore*, appellant here has failed to show that his confession was of questionable credibility. As noted above, the defendant in *Moore* had an IQ of 51. More importantly, a forensic psychiatrist for the state testified in *Moore* that because of the defendant's subaverage intelligence he was "easily lead and easily influenced." *Id.* at 337, 364 S.E.2d at 653. Family and friends of the defendant testified to the same effect. Witnesses demonstrated the defendant was

unable to understand complicated subjects. The psychiatrist testified he believed the defendant did not understand the meaning of the term "coercion." *Id.* at 333, 364 S.E.2d at 651. In short, the defendant in *Moore* submitted *detailed* evidence of his suggestible nature and of the potential coercive environment in which his confession was made.

In the present case, appellant has not made such a showing. Instead, the evidence strongly supports the state's contentions that appellant was cognizant of his actions both at the time the crimes were committed and when he made the inculpatory statements. The officers who testified at the motions hearing stated that when interviewed appellant was alert, attentive, and capable of relating the specifics of the case and his involvement in the robbery and shooting.

Appellant's evidence in support of his charge of incapacity primarily comes from a report issued by a state psychiatrist, who evaluated his competency to stand trial, and from appellant's own statements. While the psychiatrist reported he believed Seaberry was a cocaine addict and intoxicated during the period of the alleged crimes, he also concluded appellant was competent to stand trial, that he understood the charges against him, that he was able to cooperate with and assist his attorney in preparing his defense, that he knew right from wrong, and that he was responsible for his actions at the time of the alleged crimes. The only conclusion in the psychiatrist's report supporting appellant's contention of mental incompetency — that he was a cocaine addict when he committed the crimes and when he confessed — was based largely on interviews with appellant, his girlfriend, and his attorney. The psychiatrist also reported he thought appellant was being voluntarily uncooperative during his first evaluation, and he chose to defer his final judgment on competency because he wanted to rule out "malingering" by appellant. In addition, the state presented evidence that Seaberry had made statements to another prisoner soon after he was arrested indicating he intended to fake mental illness and a drug problem to get out of the charges against him. In short, appellant has failed to make the specific evidentiary showing as outlined in *Moore* placing in question his mental condition.

Finally, as a practical matter, appellant had one state appointed psychiatrist when he made his request and did not need a second one. At the time of the motions hearing in Johnston County, ap-

pellant already had been appointed a psychiatrist by a Wake County Superior Court judge for preparation of his defense against separate charges of a similar nature. There appears no reason why appellant could not have subpoenaed the Wake County psychiatrist to provide whatever assistance he needed in the Johnston County case. As the motions hearing judge noted, an indigent is not entitled to more help than someone who is not indigent.

Moreover, we find no error in the trial court's denial of defendant's motion for a state appointed ballistics expert. In *Moore* the palmprint was the only physical evidence the state had against the accused. That is not the situation in this case. While the ballistics expert's testimony may have been important for the state to prove its case against Seaberry beyond a reasonable doubt, our reading of *Moore* is that this fact alone is not sufficient to require the appointment of an independent expert. Second, in reaching its decision in *Moore*, we note that the Supreme Court emphasized the limited communication and reasoning abilities of the mentally retarded defendant and recognized he would be unable to assist his counsel in the preparation of his defense. *Moore*, at 344-45, 364 S.E.2d at 657. Again, that is not the case here. Although Seaberry may be a cocaine addict, he presented no detailed evidence contradicting the psychiatrist's conclusion he was capable of assisting in his defense. Thus, the denial of appellant's motions requesting a ballistics expert is upheld.

[2] Appellant next assigns error to the fact that he was not present at the pretrial hearing on 19 September 1988 when the motions discussed above were denied. The hearings judge proceeded after he inquired concerning appellant's whereabouts and was informed Seaberry was in custody in Wake County for other charges pending against him. Appellant claims this deprived him of his right to be present at the hearing and to confront the witnesses who testified, and that he is entitled to a new trial.

A criminal defendant has the constitutional right to be present at any stage of a criminal proceeding that is critical to the outcome if his presence would contribute to the fairness of the procedure. *Snyder v. Massachusetts*, 291 U.S. 97, 78 L.Ed. 674, 54 S.Ct. 330 (1934); *State v. Braswell*, 312 N.C. 553, 324 S.E.2d 241 (1985). The Confrontation Clause of the Sixth Amendment made applicable to the states by the Fourteenth Amendment grants defendants the right to be present at any stage of the proceedings at which

witnesses are to be questioned. *Illinois v. Allen*, 397 U.S. 337, 25 L.Ed. 2d 353, *reh'g denied*, 398 U.S. 915, 26 L.Ed. 2d 80 (1970); *State v. Moore*, 275 N.C. 198, 166 S.E.2d 652 (1969). Similarly, the North Carolina Constitution at Article I, § 23 provides: "[i]n all criminal prosecutions, every person charged with a crime has the right to be informed of the accusation and to confront the accusers and witnesses with other testimony . . . ."

A defendant's right to be present at every stage of trial also has a due process component. 3 W. LaFave & J. Israel, *Criminal Procedure* § 23.2(c) (Supp. 1989). Accordingly, this right is not restricted to situations where defendant is actually confronting witnesses or evidence against him, but encompasses all trial-related proceedings at which defendant's presence "has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Id.*

More importantly, whether a particular proceeding is critical to the outcome of the trial is *not* the proper inquiry in determining if a criminal defendant's rights under the Sixth Amendment has been violated. *Kentucky v. Stincer*, 482 U.S. 730, 96 L.Ed. 2d 631 (1987). "The appropriate question is whether there has been any interference with defendant's opportunity for effective cross-examination." *Id.* at 745, n.17, 96 L.E.2d at 647, n.17. Similarly, under the due process analysis, "the question is not simply whether, 'but for' the outcome of the proceeding, the defendant would have avoided conviction, but whether the defendant's presence at the proceeding would have contributed to the defendant's opportunity to defend himself against the charges." *Id.* This privilege of presence is not guaranteed "when presence would be useless, or the benefit but a shadow." *Snyder*, at 106-107, 78 L.Ed. at 678. Defendant has made no showing that the motions hearing would have been more reliable due to his physical presence or his contributions to the process of cross-examination.

Assuming for a moment that a hearing for a state appointed expert is deemed a critical stage requiring the defendant's presence, we believe appellant in this case waived his right to attend his motions hearing. *See Braswell*, at 559, 324 S.E.2d at 246. Neither the record nor the transcript of the hearing reveal any indication appellant wanted to be present at the hearing. Defense counsel never objected to appellant's absence, requested appellant be transported to Johnston County for the hearing, nor asked that

the hearing be delayed until appellant could attend. "In a non-capital case counsel may waive defendant's right to be present through failure to assert it just as he may waive defendant's right to exclude inadmissible evidence by failing to object." *Id.* The most likely reason for appellant's absence from the hearing is that neither appellant nor his counsel felt his presence was necessary.

Finally, in *State v. Braswell,* the Supreme Court recognized a defendant's right to confront witnesses against him, like his right to be present at all critical stages of a trial, is subject to harmless error analysis. *Id.* at 553, 324 S.E.2d at 241; *State v. Zuniga,* 320 N.C. 233, 357 S.E.2d 898, *cert. denied,* 484 U.S. 959, 98 L.Ed. 2d 384 (1987). "Every violation of a constitutional right is not preju-dicial. Some constitutional errors are deemed harmless in the set-ting of a particular case, not requiring the automatic reversal of a conviction, where the appellate court can declare a belief that it was harmless beyond a reasonable doubt." *State v. Taylor,* 280 N.C. 273, 280, 185 S.E.2d 677, 682 (1972); *see* N.C.G.S. § 15A-1443(b). Assuming it was improper for the trial judge to conduct the motions hearing without appellant present, we believe that decision had no effect on the outcome of the trial.

Defendant's remaining assignments of error relating to admis-sion of his confession and physical evidence are feckless.

No error.

Chief Judge HEDRICK concurs.

Judge BECTON dissents.

Judge BECTON concurring in part and dissenting in part.

Like the majority, I find no error in defendant's assignments of error relating to the admission of his confession and physical evidence. I agree with the majority that defendant "had one state appointed psychiatrist [in his Wake County cases] . . . and did not need a second one," ante, at 209-10. Believing however that defendant was entitled to funds to pay the psychiatrist any addi-tional necessary expenses incurred in the preparation of his Johnston County case, that defendant made a threshold showing of specific necessity for funds to obtain the assistance of a ballistics expert,

and that defendant had a right to be present at the hearing regarding his requests for experts, I dissent.

Although defendant had no right to the appointment of multiple experts or the expert of his choice, he was entitled to a psychiatrist who could assist him in evaluating, preparing, and presenting his defense against the charges for which he was on trial. *See State v. Moore*, 321 N.C. 327, 364 S.E.2d 648 (1988). I believe the trial judge erred in denying defendant's motion for funds for a psychiatrist.

Further, since there were no eyewitnesses who could positively identify defendant as the culprit and the State's case hinged significantly upon the ballistics evidence, I believe defendant made a threshold showing of specific necessity for a ballistics expert. In my view, *Moore* controls. In that case, our Supreme Court considered defendant's right to an independent fingerprint expert when the single piece of physical evidence placing defendant at the crime scene was a palm print which, according to the State's expert, matched defendant's. Noting 1) that a palm print found at the crime scene had been identified by the State's expert as defendant's, 2) that the State's witness could not identify the perpetrator of the crimes charged, 3) that the State's palm print evidence was thus critical to the State's case, 4) that defense counsel lacked the expertise to assess the accuracy of the State's expert's identification of the palm print, and 5) that defendant Moore was mentally retarded and able to provide his counsel with little assistance in making his defense, the Court concluded that defendant had made the requisite threshold showing of specific necessity for a fingerprint expert and that he would have been materially assisted in the preparation of his defense had his motion been granted. In the case before us, defendant made a similar showing. Although he was not mentally retarded, there was evidence that he was a cocaine addict and was under the influence of drugs when the crime occurred.

Further, in denying defendant's motion for funds to hire a ballistics expert, the trial judge operated under a misapprehension of fact and law. First, the trial judge erroneously believed that there was no confession in the *Moore* case. He said that "[i]n the *Moore* case they didn't have a confession. That's a material point. I can't see how I could find that the assistance of a ballistics expert could assist [in] the preparation of this defense." Second,

the trial judge erroneously believed that defendant had to show a likelihood that the requested expert would reach a conclusion favorable to defendant. He said, ". . . I think you have to at least establish probable cause that you might get that result, and you have not done that here . . . . But just on the mere fact [that] 'I might get lucky,' the State is supposed to pay for that?" The *Moore* court rejected a similar assertion:

> The showing suggested by the State is not required. To require as a condition precedent to acquiring an appointed fingerprint expert that the defendant discredit the State's expert testimony stands at odds with the general "threshold" showing of need required under our cases. The State's proposed test would demand that the defendant possess already the expertise of the witness sought.

321 N.C. at 345, 364 S.E.2d at 657.

Finally, defendant was denied his constitutional rights to be present at all critical stages of the trial and to confront witnesses against him. *See Rushen v. Spain*, 464 U.S. 114, 78 L.Ed.2d 267 (1983), *reh'g denied*, 465 U.S. 1055, 79 L.Ed.2d 730 (1984); *State v. Braswell*, 312 N.C. 553, 324 S.E.2d 241 (1985). Defense counsel's failure to request defendant's presence or to expressly consent to defendant's absence is not fatal, in my view, since defense counsel did not have the power to waive defendant's right to be present at a hearing involving felony offenses. Significantly, had defendant been present he may have been in a better position to assist his attorney in some way. Moreover, an opportunity to observe the conduct and demeanor of the defendant reasonably may have affected the trial judge's assessment of defendant's need for the assistance of a psychiatrist. In my view this error cannot be said to be harmless beyond a reasonable doubt. *Braswell*, 312 N.C. at 560, 324 S.E.2d at 247.

For the foregoing reasons, I believe defendant should be awarded a new trial.