STATE OF NORTH CAROLINA v. KENNETH LEE BOYD

No. 547A88

(Filed 17 July 1992)

1. **Constitutional Law § 344 (NCI4th)— first degree murder — voir dire — private, unrecorded bench conference — new trial**

   A defendant in a first degree murder prosecution was entitled to a new trial where the trial court deferred a juror's service after a private, unrecorded conference with the juror at the bench during jury selection. Whether the potential juror was deferred or excused altogether, the juror was rendered unavailable for defendant's trial. Moreover, the State's motion to allow amendment of the record on appeal four days before oral argument to show that the deferred juror was a substitute teacher and that the judge concluded that service at that time would create a hardship for the school was denied under *State v. McCarver*, 329 N.C. 259.

   **Am Jur 2d, Jury §§ 177, 202.**

   **Validity of jury selection as affected by accused's absence from conducting of procedures for selection and impaneling of final jury panel for specific cases. 33 ALR4th 429.**

2. **Indigent Persons § 19 (NCI4th)— murder — private counsel — motion for State funding of mental health expert**

   A defendant in a murder prosecution, reversed on other grounds, should not have been denied State funding of a mental health expert on the ground that defendant was not represented by court-appointed counsel. Defendants are required to contribute whatever they can to the cost of their representation, but they are eligible for state funding of the remaining necessary expenses of representation whenever their personal resources are depleted and they can demonstrate indigency.

   **Am Jur 2d, Criminal Law § 1006.**

   **Right of indigent defendant in state criminal case to assistance of psychiatrist or psychologist. 85 ALR4th 19.**

Justice LAKE did not participate in the consideration or decision of this case.

STATE v. BOYD

[332 N.C. 101 (1992)]

APPEAL of right pursuant to N.C.G.S. § 7A-27(a) from a judg-
ment imposing a sentence of death entered by *Currin, J.,* at the
17 October 1988 Criminal Session of Superior Court, ROCKINGHAM
County, upon defendant's conviction by a jury of murder in the
first degree. Heard in the Supreme Court 6 May 1991.

*Lacy H. Thornburg, Attorney General, by Steven F. Bryant,*
*Special Deputy Attorney General, for the State.*

*Sam J. Ervin, IV, for defendant-appellant.*

EXUM, Chief Justice.

Defendant was indicted in separate bills dated 16 May 1988
for the murders of his estranged wife and her father on 4 March
1988. In a capital trial the jury returned verdicts of guilty as
charged. After a sentencing proceeding, the jury recommended,
and the trial court accordingly entered, a sentence of death for
each murder.

There are two assignments of error which merit discussion.
The first relates to the trial court's excusing a juror from service
at defendant's trial during the jury selection process and deferring
her for service at a later session after a private, unrecorded bench
conference with the juror. For this error, defendant is entitled
to a new trial. The second assignment brings forward the trial
court's denial of defendant's pretrial motion for a state-paid mental
health expert to assist defendant in the preparation of his defense.
Since the denial of this motion on the grounds given by the trial
court was error, we discuss this assignment for the guidance of
the trial court on retrial.

The evidence offered at trial may be briefly summarized in-
asmuch as it has little bearing on the assignments of error which
we address. Essentially, the State's evidence tended to show: On
4 March 1988 defendant entered the home of his estranged wife's
father, where his wife and their children were then living, and
shot and killed both his wife, Julie Boyd, and her father, Dillard
Curry, with a .357 Magnum pistol. The shooting was committed
in the presence of the children—Chris, aged thirteen; Jamie, aged
twelve; and Daniel, aged thirteen—and other witnesses, all of whom
testified for the State. Law enforcement officers were called to
the scene. As they approached, defendant came out of the woods
with his hands up and surrendered to the officers. Defendant showed

the officers where he had thrown the murder weapon into some adjacent woods. Later, after being advised of his rights, defendant made a lengthy inculpatory statement in which he described the fatal shootings, saying, "It was just like I was in Vietnam."

Defendant's evidence at trial tended to show: Defendant voluntarily served in the United States Army and volunteered for duty in Vietnam, where he was assigned to a combat engineering unit. He habitually drank alcoholic beverages to excess while in the military and since his discharge. His first marriage ended in divorce. His second marriage in 1973 to Julie Boyd was marked by frequent arguments, some violence, several separations and reconciliations. Defendant suffered intestinal illnesses which resulted in the removal of much of his stomach on one occasion and his gallbladder on another. He had sought mental health counseling. He continued to drink alcoholic beverages to excess and had drunk a number of beers on the day of the fatal shooting. His recollection of the time before and during the shootings was incomplete, but he remembered being at the Curry home, his gun going off, and seeing blood. He denied going there with the intent to kill either Julie Boyd or Dillard Curry.

Dr. Patrico Lara, a psychiatrist employed at Dorothea Dix Hospital, examined defendant periodically over a two-week period beginning 11 March 1988. Dr. Lara, testifying for defendant, thought defendant did not suffer from brain damage nor was his understanding of his situation "confused or incoherent." Dr. Lara diagnosed defendant as suffering from an "adjustment" and "personality" disorder with various features which he described for the jury.

Following jury verdicts of guilty of two counts of first-degree murder, a capital sentencing proceeding was convened. The State offered no additional evidence but relied on evidence offered during the guilt proceeding. Defendant offered several family members and others as witnesses who gave favorable accounts of his early childhood, his military career, his relationship with his children, and his employment as a truck driver.

The trial court submitted and the jury found one aggravating circumstance in each murder case: The murder was part of a course of conduct that included the commission by defendant of other crimes of violence against other persons. See N.C.G.S. § 15A-2000(e)(11) (1988). The jury unanimously found four of ten mitigating circumstances submitted but failed to find unanimously

**STATE v. BOYD**

[332 N.C. 101 (1992)]

six mitigating circumstances, including the mitigating circumstances that (1) defendant was under the influence of a mental or emotional disturbance and (2) his capacity to conform his conduct to the requirements of law was impaired when he committed the murders. See, N.C.G.S. § 15A-2000(f)(2), (6) (1988).

The State concedes that the testimony of Dr. Lara was sufficient to support both the mental or emotional disturbance and the impaired capacity mitigating circumstances. The State further concedes that the jury instructions on mitigating circumstances violated the Federal Constitution as interpreted in *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990); *see also State v. McKoy*, 327 N.C. 31, 394 S.E.2d 426 (1990). The State agrees that because of this error defendant is entitled to a new sentencing hearing.

[1] We conclude that defendant is entitled to a new trial because the trial court excused a juror during the jury selection process in defendant's trial after a private, unrecorded conference with the juror at the bench. The transcript of the trial reveals that during the second day of jury selection additional jurors were called by the clerk to come forward for questioning. The transcript reveals only the following regarding the incident in question:

> CLERK: William Harris, Charlotte Jackson. (Ms. Jackson brought a letter up and handed it to the Bailiff, who then handed it to the judge. The judge then talked to the lady at the Bench.)

> COURT: Ma'am Clerk, at this time I am going to defer that particular juror's service until one of the terms during the summer months. And if you will call another juror.

There is nothing in the trial transcript nor in the record on appeal which reveals the substance of the conversation between the trial court and prospective juror Jackson.

Our cases have long made it clear that it is error for trial judges to conduct private conversations with jurors. We said in *State v. Tate*, 294 N.C. 189, 198, 239 S.E.2d 821, 827 (1978):

> [T]he trial court's private conversations with jurors were ill-advised. The practice is disapproved. At least, the questions

and the court's response should be made in the presence of counsel.

*Tate* being a noncapital prosecution,[1] we concluded that defendant, by not objecting to the judge's action, waived his right to complain of it on appeal. In capital prosecutions, however, we have long recognized that a defendant may not waive his right to be present at every stage of his trial. *State v. Moore*, 275 N.C. 198, 166 S.E.2d 652 (1969); *State v. Jenkins*, 84 N.C. 813 (1881). Thus we have held that private conversations between the presiding judge and jurors during a capital trial, even in the absence of objection by defendant, violated defendant's right of confrontation guaranteed under Article I, Section 23, of the North Carolina Constitution and constituted reversible error unless the State could demonstrate its harmlessness beyond a reasonable doubt. *State v. Payne*, 320 N.C. 138, 357 S.E.2d 612 (1987). Since there was no record of what transpired during the conversations in *Payne*, we concluded the State could not demonstrate the harmlessness of the error.

In *State v. Smith*, 326 N.C. 792, 392 S.E.2d 362 (1990), a capital prosecution, the trial court spoke privately with prospective jurors during the jury selection process, after which the jurors were excused from having to serve. Neither the record on appeal nor the trial transcript reflected the substance of the bench conferences, except to note the trial court's conclusion that it was within its discretion to excuse each juror. This Court, cognizant of the principles announced in *Tate* and *Payne*, concluded that the process of selecting and impaneling a jury is a stage of the trial to which the defendant's right of confrontation applies and the trial court's excusal of jurors after the private conversations violated that right. We also concluded the private conversations violated the trial court's statutory duty in a capital case to make an accurate record of the jury selection process. N.C.G.S. § 15A-1241(a) (1988). Recognizing the error was subject to harmless error analysis with the burden being on the State to demonstrate its harmlessness beyond a reasonable doubt, we concluded the State could not meet that burden because "[n]o record of the trial court's private discussions with the prospective jurors exists to reveal the substance of those discussions." *Smith*, 326 N.C. at 794, 392 S.E.2d at 363-64.

1. The crime was committed on 25 December 1976, before the enactment of our present death penalty statute in 1977 and after the immediately preceding death penalty statute had been declared unconstitutional in *Woodson v. North Carolina*, 428 U.S. 280, 49 L. Ed. 2d 944 (1976).

*Smith*'s rationale and holding have been followed in *State v. Johnston*, 331 N.C. 680, 417 S.E.2d 228, 1992 WL 145045 (1992); *State v. Cole*, 331 N.C. 272, 415 S.E.2d 716 (1992); and *State v. McCarver*, 329 N.C. 259, 404 S.E.2d 821 (1991). Where, however, the transcript reveals the substance of the conversations, *State v. Payne*, 328 N.C. 377, 402 S.E.2d 582 (1991), or the substance is adequately reconstructed by the trial judge at trial, *State v. Hudson*, 331 N.C. 122, 415 S.E.2d 732 (1992); *State v. Ali*, 329 N.C. 394, 407 S.E.2d 183 (1991), we have been able to conclude that the error was harmless beyond a reasonable doubt.

Here, the substance of the conversation between the trial judge and the excused juror is not revealed by the transcript nor did the trial judge reconstruct it at trial. The State, therefore, cannot demonstrate the harmlessness of the error beyond a reasonable doubt; and defendant must be given a new trial.

That the juror was deferred for service at a future date rather than excused altogether does not call for a different result. *State v. Cole*, 331 N.C. 272, 415 S.E.2d 716 (1992). Whether deferred or excused altogether, the juror was rendered unavailable for defendant's trial.

The State on 2 May 1991, four days before oral argument, moved the Court to allow an amendment to the record on appeal. The desired amendment consisted of affidavits of the deputy clerk of court in Rockingham County and the presiding trial judge, signed, respectively, in April and May 1991, and certain jury records maintained by the clerk. These materials would tend to show that prospective juror Jackson was a substitute teacher then teaching at a public school. The trial judge excused her from jury duty for defendant's trial and deferred her until a later time because the trial judge concluded her service at that time would create a hardship on the school. This conclusion was based on a letter from Ms. Jackson's principal.

Defendant responded to this motion on 14 May 1991 and contends the motion should be denied inasmuch as it "seeks to reconstruct a record of events leading to Ms. Jackson's deferral long after the occurrence of the underlying event."

The State's motion to amend the record is denied. In *State v. McCarver*, 329 N.C. 259, 404 S.E.2d 821 (1991), we allowed a new trial for defendant because the trial judge excused jurors

STATE v. BOYD

[332 N.C. 101 (1992)]

following unrecorded bench conferences. In that case the State moved to amend the record to add an affidavit of the trial judge, accompanied by his handwritten trial notes, which explained his reasons for excusing the jurors. We denied the motion, saying, "The court reporter did not record the bench conferences, as required by N.C.G.S. § 15A-1241. We will not substitute for this statutory requirement an affidavit made approximately three years after the event. The affidavit was not a part of the record made at trial." *Id.* at 261, 404 S.E.2d at 822. *McCarver* controls and requires that the State's motion to amend the record here be likewise denied.

[2] This brings us to the second assignment of error which we discuss only for the guidance of the trial court on retrial. Defendant before trial moved pursuant to N.C.G.S. § 7A-450(a) for state funding for a mental health expert. Judge Beaty, who heard the motion before trial, acknowledged defendant's affidavit indicating that he had no funds. He nonetheless noted that defendant had released court-appointed counsel and had retained different, privately employed counsel. When he questioned defendant about this, defendant stated that someone else was paying for his counsel and that he had no assets except a 1987 tax refund. Judge Beaty offered defendant the option of accepting different, court-appointed counsel as a condition of receiving funds for an expert witness. When defendant rejected this option, Judge Beaty denied his motion, concluding "the defendant, though indigent, has retained private counsel and is therefore not entitled to State funds for the presentation of his case or his defense."

At trial defendant renewed his motion for a state-paid mental health expert and tendered to the trial judge various mental health records of defendant. The trial judge reaffirmed Judge Beaty's earlier conclusion that because defendant was not represented by court-appointed counsel he was not indigent and not entitled to state assistance pursuant to N.C.G.S. § 7A-450(a). The trial judge denied the motion on this ground.

We address here only the question whether defendant's motion for a state-paid mental health expert should have been denied, as it was, because defendant, although financially unable to employ the expert, was not represented by court-appointed counsel. We conclude, for reasons given below, that the motion should not have been denied on this ground. We express no opinion on whether

STATE v. BOYD

[332 N.C. 101 (1992)]

defendant's motion should have been denied on the ground that he made an insufficient evidentiary showing.[2] Neither do we express an opinion on whether Dr. Lara's availability and participation in the trial on defendant's behalf justified denying defendant's motion or rendered the denial harmless. The evidentiary showing at defendant's new trial and in support of this motion will ultimately govern these questions.

Under some circumstances an indigent defendant in a criminal case has a right to be furnished the assistance of a mental health expert. This right is guaranteed by the Fourteenth Amendment to the United States Constitution, *Ake v. Oklahoma*, 470 U.S. 68, 84 L. Ed. 2d 53 (1985); *State v. Gambrell*, 318 N.C. 249, 347 S.E.2d 390 (1986), and by statute, *State v. Moore*, 321 N.C. 327, 364 S.E.2d 648 (1988). An indigent person is defined as one "who is financially unable to secure legal representation and to provide all other necessary expenses of representation." N.C.G.S. § 7A-450(a) (1989). "Whenever a person . . . is determined to be an indigent person entitled to counsel, it is the responsibility of the State to provide him with counsel and the other necessary expenses of representation." N.C.G.S. § 7A-450(b) (1989). "The question of indigency may be determined or redetermined by the court at any stage of the action or proceeding at which an indigent is entitled to representation." N.C.G.S. § 7A-450(c) (1989). *See also* N.C.G.S. § 7A-450(d) (1989). A defendant determined to be partially indigent must pay as he can the expenses of his defense, and the state is required to pay only the remaining balance. N.C.G.S. § 7A-455(a) (1989).

In *State v. Hoffman*, 281 N.C. 727, 738, 190 S.E.2d 842, 850 (1972), this Court read these statutes as manifesting a legislative intent "that every defendant in a criminal case, to the extent of his ability to do so, shall pay the cost of his defense." In *Hoffman*, the defendant was determined not to have been indigent at the time of his arrest and thus not entitled to court-appointed counsel *at that time*. The Court said, however, that the defendant's "ability to pay the costs of subsequent proceedings . . . was a matter

---

2. For cases discussing the sufficiency of the factual showing which a defendant must make, *see, e.g., Ake v. Oklahoma*, 470 U.S. 68, 84 L. Ed. 2d 53 (1985); *State v. Parks*, 331 N.C. 649, 417 S.E.2d 467 (1992); *State v. Moore*, 321 N.C. 327, 364 S.E.2d 648 (1988); *State v. Gambrell*, 318 N.C. 249, 347 S.E.2d 390 (1986). *See also State v. Phipps*, 331 N.C. 427, 418 S.E.2d 178 (1992), on the issue of defendant's entitlement to an *ex parte* hearing.

to be determined when that question arose." *Id.* at 738, 190 S.E.2d at 850.

We stress, as we did in *Hoffman*, that the purpose of these statutes is to require defendants to contribute whatever they can to the cost of their representation. But whenever a defendant's personal resources are depleted and he can demonstrate indigency, he is eligible for state funding of the remaining necessary expenses of representation.

That defendant had sufficient resources to hire counsel does not in itself foreclose defendant's access to state funds for other necessary expenses of representation—including expert witnesses— if, in fact, defendant does not have sufficient funds to defray these expenses when the need for them arises.

We vacate the verdicts and judgments entered against defendant and remand this case to the Superior Court, Rockingham County, for a

New trial.

Justice LAKE did not participate in the consideration or decision of this case.