STATE OF NORTH CAROLINA v. ELWIN ANEURIN JONES

No. 545A95

(Filed 8 November 1996)

### Indigent Persons § 19 (NCI4th)— motion for appointment of psychiatric expert—improper denial

In this noncapital prosecution of defendant for the first-degree murder of his estranged wife, the hearing court erred in denying defendant's pretrial motion for the appointment of a psychiatric expert to assist in the preparation of his defense where defendant's counsel demonstrated to the hearing court

STATE v. JONES

[344 N.C. 722 (1996)]

that the only defense he intended to raise was that defendant suffered from diminished capacity at the time of the killing and thus may not have acted with premeditation and deliberation or the specific intent to kill; defendant's counsel presented medical notes of a Virginia doctor which indicated that defendant suffered from mental illness, particularly depression, and had suicidal inclinations, that for five months prior to the killing defendant was being treated with Prozac as well as with other drugs to counteract the side effects of Prozac, and that defendant had no prior history of violence; and defense counsel presented his own affidavit wherein he stated that defendant admitted to not being in control of his mental processes at the time of the killing and had advised counsel that he had no premeditated intent to kill. Defendant made the requisite threshold showing that his mental capacity when the offense was committed would be a significant factor at trial and that there was a reasonable likelihood that an expert would be of material assistance in the preparation of his defense.

**Am Jur 2d, Constitutional Law § 848; Criminal Law §§ 46-51, 67, 68; Homicide §§ 114, 115, 133, 251.**

**Modern status of test of criminal responsibility—state cases. 9 ALR4th 526.**

**Adequacy of defense counsel's representation of criminal client regarding incompetency, insanity, and related issues. 17 ALR4th 575.**

**Notice to government of defense based upon defendant's mental condition at time of alleged crime, and court-ordered psychiatric examination thereon, under Rule 12.2, Federal Rules of Criminal Procedure. 63 ALR Fed. 552.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Seay, J., at the 7 August 1995 Criminal Session of Superior Court, Wilkes County, upon a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 15 October 1996.

*Michael F. Easley, Attorney General, by Daniel F. McLawhorn, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, for defendant-appellant.*

STATE v. JONES

[344 N.C. 722 (1996)]

WHICHARD, Justice.

Defendant was tried noncapitally for the first-degree murder of his estranged wife, Lisa Jones. The jury found defendant guilty as charged. The trial court sentenced him to a mandatory term of life imprisonment.

The evidence presented at trial tended to show that in January 1994, defendant and his wife, Lisa Jones, lived in Richmond, Virginia. They were having marital difficulties, and defendant suffered from severe depression as a result. In February 1994 defendant went to see Dr. J. Daniel Foster for advice and treatment concerning his mental condition. Dr. Foster found defendant to be suffering from depression and hypertension and prescribed the medication Prozac. The Prozac made defendant nervous and unable to sleep, so Dr. Foster prescribed additional drugs to counteract its side effects.

Sometime in February, Lisa told defendant that she no longer loved him and wished to separate. In March the two had a heated argument in the course of which defendant threatened to kill himself, pulled out a gun, and fired a shot. On 1 June 1994 Lisa obtained a restraining order barring defendant from their apartment. Shortly thereafter, defendant left for Europe. When he returned, he learned that Lisa had moved to Wilkesboro, North Carolina, due to a job transfer. He further learned that she was accompanied by her daughter and by Ed Jordan, a man with whom she had forged a close personal relationship.

Defendant went to Wilkesboro in pursuit of Lisa. On 23 July 1994 defendant followed her from her hotel towards the K-Mart where she worked. He caught up with her in a parking lot near Wal-Mart and asked if they could work things out, to which Lisa replied that their relationship was over. Defendant then asked her if it was true that Ed Jordan had been staying at their apartment while defendant was out of town. Lisa responded that it was. She then drove away.

Defendant followed Lisa to the K-Mart. Once there, he parked and walked over to her car. He opened the door, grabbed Lisa by the neck, and fired multiple shots into the back of her head. Defendant immediately fled the scene. He was apprehended six months later in Calhoun, Georgia.

Defendant contends the hearing court committed reversible error in denying his pretrial motion for the appointment of a psychiatric expert to assist in the preparation of his defense. We agree.

Defense counsel filed a written pretrial motion requesting the appointment of a psychiatric expert to evaluate defendant's mental condition. On 24 April 1995 Judge Julius Rousseau conducted an *ex parte* hearing on the motion. At the hearing defense counsel argued that he had a medical statement from Dr. Foster in Richmond establishing that defendant had been treated for depression and suicidal tendencies in the months preceding the murder. Counsel further noted that defendant had no history of violence or criminal activity of any sort prior to this incident. He concluded that without professional evaluation of defendant's mental state at the time of this crime, defendant could not be provided a proper and adequate defense.

In response Judge Rousseau stated that a particularized need for an expert had to be shown and that defendant's motion had fallen short of meeting that threshold. He left the motion open with instructions for defense counsel to file a supplementary supporting affidavit demonstrating a particularized need for a psychiatric expert.

The hearing resumed on 2 May 1995. At that time defense counsel presented his own affidavit, wherein he stated in part:

I believe that a psychological evaluation of the Defendant is absolutely necessary for me to properly defend him. The Defendant is charged with first degree murder in this case and has absolutely no history of criminal or violent behavior. Prior to the alleged murder, the Defendant had been treated by Dr. J. Daniel Foster of Richmond, Virginia for depression and other medical problems. On or about the time of the alleged murder, the Defendant was taking Prozac as prescribed by Dr. Foster, as well as other medications. These medications may have had an effect on the Defendant's mentality or behavior at the time of said murder. The Defendant has advised Counsel that he had no intent or premeditation with respect to the alleged murder, and further, that the mental processes which controlled his behavior at that time were not within his own control. Based on the history of the Defendant given to Counsel, he has made a number of suicide attempts both before and after the alleged murder.

. . . [E]valuation is crucial to my defending the Defendant in that his entire defense in this case may revolve around the question of whether there was premeditation and deliberation.

Attached to the affidavit were copies of three pages of medical notes from Dr. Foster, documenting his treatment of defendant for

mental illness from 11 February 1994 until 17 May 1994. According to the notes, defendant suffered from depression as a result of family stress and marital discord. He had frequent suicidal ideations and felt like he "[was] falling apart." He had difficulty sleeping and was described as "listless, agitated and hostile." Over the course of his treatment, defendant lost seventeen pounds. At each visit, Dr. Foster prescribed Prozac in an attempt to stabilize defendant's mental condition.

Judge Rousseau subsequently denied defendant's motion for the appointment of a psychiatric expert. He made no findings of fact or conclusions of law.

*Ake v. Oklahoma*, 470 U.S. 68, 84 L. Ed. 2d 53 (1985), and our cases decided pursuant to *Ake*, compel the conclusion that the hearing court erred in denying defendant's motion for a psychiatric expert to assist in the preparation of his defense. In *Ake*, the United States Supreme Court held:

[W]hen a[n indigent] defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.

*Id.* at 83, 84 L. Ed. 2d at 66. This Court, following *Ake*, has required, upon a threshold showing of a specific need for expert assistance, the provision of funds for an expert. *State v. Moore*, 321 N.C. 327, 364 S.E.2d 648 (1988).

To make a threshold showing of specific need for the assistance of an expert, a defendant must demonstrate either that he will be deprived of a fair trial without expert assistance or that there is a reasonable likelihood that it will materially assist him in the preparation of his case. *State v. Phipps*, 331 N.C. 427, 446, 418 S.E.2d 178, 187 (1992). In determining whether a defendant has made the requisite threshold showing, the court should consider all the facts and circumstances known to it at the time the motion for psychiatric assistance is made. *State v. Gambrell*, 318 N.C. 249, 256, 347 S.E.2d 390, 394 (1986).

In this case, counsel for defendant clearly demonstrated to the hearing court that the only defense he intended to raise or could raise

**STATE v. JONES**

[344 N.C. 722 (1996)]

was that at the time of the killing, defendant suffered from diminished capacity and therefore may not have acted with premeditation and deliberation or the specific intent to kill. There was sufficient evidence before the court, in the form of Dr. Foster's dated medical notes, indicating that defendant suffered from mental illness, particularly depression, and that he had suicidal inclinations. Defendant was being treated with Prozac, a psychotropic drug, as well as other drugs to counteract the side effects of the Prozac. He had been taking this medication for more than five months prior to the killing, with only variable results. Defendant had no history of prior violence, and it was evident that his homicidal conduct in this instance was inconsistent with this prior history. Defense counsel presented his own affidavit wherein, under oath, he stated that defendant admitted to not being in control of his mental processes at the time of the murder and had advised counsel that he had no premeditated intent to kill.

We conclude that, under all the facts and circumstances known at the time the motion for psychiatric assistance was ruled upon, defendant had made the requisite threshold showing that his mental capacity when the offense was committed would be a significant factor at trial and that there was a reasonable likelihood that an expert would be of material assistance in the preparation of his defense. Defendant's mental state at the time of the murder was the only triable issue of fact in this case. He was entitled to present information on this issue to the jury in an intelligible manner so as to assist it in making an informed and sensible determination. He must therefore be given a new trial at which the court must, upon the threshold showing of need made here, appoint a psychiatric expert for the purpose of evaluating defendant and assisting him in preparing and presenting his defense.

In view of our disposition of this issue and the improbability that the other errors assigned will recur upon retrial, we find it unnecessary to address defendant's remaining arguments.

NEW TRIAL.